UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLES BENNETT,

                              Plaintiff,

        -v-

                                                    CIVIL ACTION NO.: 17 Civ. 2067 (SLC)

COMMISSIONER OF SOCIAL SECURITY,
                                                    **OPINION AND ORDER**

                              Defendant.

**SARAH L. CAVE**, United States Magistrate Judge.

## I.INTRODUCTION

Before the Court is a motion, filed by Daniel Berger, Esq. ("Berger"), counsel for Plaintiff

Charles Bennett ("Bennett"), for attorneys' fees pursuant to a contingency fee agreement (the

"Agreement"), and the Social Security Act § 206(b)(1), 42 U.S.C. § 406(b)(1) (the "Act").  (ECF

No. 21 (the "Motion")).  The Motion follows a favorable decision awarding benefits to Bennett

after the Court remanded this case to the Commissioner of Social Security (the "Commissioner")

for further proceedings.  (ECF No. 18).

For the reasons set forth below, the Motion is GRANTED.  The Court awards attorneys'

fees to Berger in the amount of $11,444.38 and orders Berger to refund promptly to Bennett the

amount of attorneys' fees he was previously awarded under the Equal Access to Justice Act

("EAJA"), that is, $3,774.90 (the "EAJA Fees").

## II.BACKGROUND

On June 17, 2013, Bennett filed an application for Disability Insurance Benefits ("DIB")

and Supplemental Security Income benefits ("SSI"), alleging a disability beginning on December 1,

2010 due to obesity, hypertension, anemia, ankle sprain, chronic pain syndrome, depression, and other ailments.  (ECF Nos. 1 ¶¶ 4–5; 22 ¶ 1).  After the Social Security Administration ("SSA") denied Bennett's application, he requested that an Administrative Law Judge ("ALJ") conduct a hearing, which was held on May 8, 2015.  (ECF Nos. 1 ¶¶ 6–7; 22 ¶ 1).  On August 26, 2015, the ALJ denied Bennett's claim (the "ALJ Decision").  (ECF Nos. 1 ¶ 7; 22 ¶ 1).  On February 3, 2017, the Appeals Council affirmed the ALJ Decision, rendering the ALJ Decision the "final decision" of the Commissioner.  (ECF Nos. 1 ¶ 8; 22 ¶ 1).

After deciding to appeal the ALJ Decision to federal court, on March 9, 2017, Bennett entered into the Agreement with Berger, who would represent him in the federal court proceedings.  (ECF No. 22-1).  The Agreement provides that, "[u]pon successful conclusion of [the] Federal Court action, [Berger] will move before the Federal Court for approval of a fee not to exceed 25% of retroactive benefits due to [Bennett]."  (Id.)  The Agreement also acknowledges that Berger would request "direct payment of the EAJA fee approved by [the] Federal Court." (Id.)

On March 22, 2017, Bennett filed the Complaint in this case.  (ECF No. 1).  The parties consented to Magistrate Judge jurisdiction.  (ECF No. 11).  After Bennett filed a motion for judgment on the pleadings (ECF No. 14), the parties stipulated that the ALJ's Decision was reversed and the case was remanded for further proceedings.  (ECF No. 18).  On March 8, 2018, the parties stipulated that the Commissioner would pay Berger $5,000 in fees pursuant to the EAJA, subject to offset against any debt Bennett owed under the Treasury Offset Program.  (ECF No. 20).  Because Bennett did owe federal debt, the amount of EAJA fees Bennett received was $3,774.90.  (ECF No. 22 ¶ 4).

Following remand, on July 30, 2018, a second ALJ held a hearing, during which Bennett

amended his disability onset date to June 17, 2012.  (ECF No. 22 ¶ 5).  On October 9, 2018, the

ALJ found Bennett disabled as of June 17, 2012.  (Id.)  On March 31, 2019, the SSA sent Bennett

a Notice of Award stating that he was entitled to monthly disability benefits beginning December

2012 (the "Notice of Award").  (ECF No. 25-1).  The Notice of Award does not state the total

amount of benefits Bennett was to receive, but rather contained a schedule of benefit amounts

"before any deductions or rounding," and subject to "child support, alimony, or court ordered

victim restitution."  (Id. at 1).  For example, the SSA withheld $264.40 from each monthly

payment to pay Bennett's obligations (Id. at 2).  The Notice of Award also stated that the SSA

"withheld $17,444.38 [25%] from your past due benefits in case we need to pay your

representative."  (Id. at 3).  "If all the work on this case" was finished, Berger was required to

submit "a request to have [his fee] approved . . . right away," but if work was continuing, Berger

had 60 days to notify the SSA "that a fee will be charged."  (Id. at 3–4).  The Notice of Award

added that, "[w]hen the amount of the fee is decided, we will let you and the representative

know how much of this money will be used to pay the fee" and "will send any remainder to"

Bennett.  (Id. at 4).  On February 2, 2021, the SSA sent to Berger a Status Notice informing him

that the SSA was "withholding the amount of $11,444.38, which represents the balance of 25%

of the past-due benefits" for Bennett. (ECF No. 22-3 at 1 (the "Status Notice")).  The Status Notice

added that the SSA had previously paid Berger $5,902.00, representing the $6,000 statutory fee

under § 206(a) of the Act less the $98.00 user fee, and inquired whether Berger had yet

petitioned the federal court for an award of fees.  (Id.)

On February 17, 2021, Berger filed the Motion seeking $11,444.38 in attorneys' fees.  (ECF

Nos. 21; 22 ¶ 10).  In his Affirmation in support of the Motion, Berger states that on June 5, 2019,

he had requested $17,444.38 in fees under Section 406(a) of the Act, but was only awarded

$6,000.  (ECF No. 22 ¶ 9).  He states that his "office" received the Status Notice indicating that

the SSA continued to hold back $11,444.38 from Bennett's past-due benefits for the payment of

attorneys' fees.  (Id. ¶ 10).  At the Court's request (ECF No. 24), the Commissioner responded to

the Motion.  (ECF No. 25 (the "Response")).  In the Response, the Commissioner confirmed that

the amount Berger seeks "is not greater that 25 percent of" Bennett's past-due benefits and

reflects a reasonable hourly rate.  (Id. at 2).  The Commissioner noted the absence of "evidence

of fraud or overreaching in the making of the [A]greement," and recommended that, if the

Motion were granted, Berger return to Bennett the EAJA Fees.  (Id.)  Finally, while noting that

"the question of timeliness" is in the Court's discretion, the Commissioner noted that the Motion

may be untimely because the Notice of Award was dated March 31, 2019, but the Motion was

not filed until February 2021, which is beyond the 17-day deadline imposed by the Second Circuit

in Sinkler v. Berryhill, 932 F.3d 83, 86 (2d Cir. 2019).  (Id. at 2).

In the course of litigating the federal case, Berger and his paralegals recorded a total of

27.1 hours, 26.6 of which were attorney hours and 0.5 of which were paralegal hours.  (ECF

No. 22-2).

### III. DISCUSSION

#### A.  Legal Standard

"Three statutes authorize attorneys' fees in social security actions.  42 U.S.C. § 406(a)

compensates attorneys for representation at the administrative level, 42 U.S.C. § 406(b)

compensates attorneys for representation before federal courts, and the [EAJA] provides for

additional fees if the Government's position in litigation was not 'substantially justified.'"

Cardenas v. Astrue, No. 12 Civ. 6760 (AJN), 2016 WL 1305988, at *1 (S.D.N.Y. Mar. 31, 2016).

The Act states that:

> Whenever a court renders a judgment favorable to a claimant . . . who was
> represented before the court by an attorney, the court may determine and allow
> as part of its judgment a reasonable fee for such representation, not in excess of
> 25 percent of the total of the past-due benefits to which the claimant is entitled
> by reason of such judgment[.]

42 U.S.C. § 406(b)(1)(A).

The Supreme Court has explained that "§ 406(b) does not displace contingent-fee

agreements" but rather, "calls for court review of such arrangements as an independent check,

to assure that they yield reasonable results in particular cases."  Gisbrecht v. Barnhart, 535 U.S.

789, 807 (2002).  Within the 25 percent statutory limit, an attorney must show that the fees

sought are reasonable for the services rendered.  Id. at 807.  The Section 406(b) analysis of

reasonableness "must begin with the agreement [between plaintiff and his counsel], and the

district court may reduce the amount called for by the contingency agreement only when it finds

the amount to be unreasonable."  Wells v. Sullivan, 907 F.2d 367, 371 (2d Cir. 1990).

When evaluating the reasonableness of a contingency fee agreement, "a court should []

balance the interest in protecting claimants from inordinately large fees against the interest in

ensuring that attorneys are adequately compensated so that they continue to represent clients

in disability benefits cases."  Bate v. Berryhill, No. 18 Civ. 1229 (ER), 2020 WL 728784, at *2

(S.D.N.Y. Feb. 13, 2020) (internal citations omitted).

Specifically, in assessing the reasonableness of the requested fee award, the Court should consider:  (1) "whether the contingency fee is within the twenty-five percent limit;" (2) "whether the retainer was the result of fraud or overreaching by the attorney;" and (3) "whether the attorney would enjoy a windfall relative to the services provided."  Pelaez v. Berryhill, No. 12 Civ. 7796 (WHP) (JLC), 2017 WL 6389162, at *1 (S.D.N.Y. Dec. 14, 2017) (internal citations omitted), adopted by, 2018 WL 318478 (S.D.N.Y. Jan. 3, 2018).

With respect to the third factor—whether the award constitutes a "windfall"—courts in this Circuit consider:

> 1) whether the attorney's efforts were particularly successful for the plaintiff, 2) whether there is evidence of the effort expended by the attorney demonstrated through pleadings which were not boilerplate and through arguments which involved both real issues of material fact and required legal research, and finally, 3) whether the case was handled efficiently due to the attorney's experience in handling social security cases.

Blizzard v. Astrue, 496 F. Supp. 2d 320, 323 (S.D.N.Y. 2007) (quoting Joslyn v. Barnhart, 389 F. Supp. 2d 454, 456–57 (W.D.N.Y. 2005)).  Attorneys' fees may be awarded under the EAJA or Section 406(b), but a "claimant's attorney must 'refun[d] to the claimant the amount of the smaller fee.'"  Rodriguez v. Colvin, 318 F. Supp. 3d 653, 658 (S.D.N.Y. 2018) (quoting Gisbrecht, 535 U.S. at 798).

Generally, pursuant to Federal Rule of Civil Procedure 54(b), "a fee application under § 406(b) must be filed within 14 days after the entry of judgment."  Almodovar v. Saul, No. 16 Civ. 7419 (GBD) (SN), 2019 WL 7602176, at *2 (S.D.N.Y. Oct. 4, 2019) (citing Sinkler, 932 F.3d at 85).  In social security cases, however, although "§ 406(b) caps attorneys' fees at 25% of the benefits award, [] the Commissioner typically does not calculate the amount of past-due benefits until months after the decision to remand."  Id.  Thus, "[t]o avoid imposing a 'deadline that cannot

be met,'" the Second Circuit "applied the doctrine of equitable tolling to extend the time to file

a fee motion until 14 days after the claimant is notified of the amount of any benefits award."

Id. (citing Sinkler, 932 F.3d at 85, 87).  The Second Circuit also explained in Sinkler that the usual

"presumption that a party receives communications three days after mailing" applies, such that

the fee request is to be filed within 17 days of the Notice of Award.  Sinkler, 932 F.3d at 89 n.5;

see Perry v. Comm'r of Soc. Sec., No. 1:17-CV-1306-MAT, 2020 WL 360979, at *3 (W.D.N.Y.

Jan. 22, 2020).  The trigger for the start of the 17-day clock "is when counsel, not the claimant, is

notified of the benefits calculation."  Almodovar, 2019 WL 7602176, at *2; see Sinkler, 932 F.3d

at 88 ("Once counsel receives notice of the benefits award . . . there is no sound reason not to

apply [Rule 54's] fourteen-day limitations period to a § 406(b) filing.").

Nevertheless, the 17-day deadline "do[es] not apply if a 'court order provides otherwise.'"

Almodovar, 2019 WL 7602176, at *2 (quoting Fed. R. Civ. P. 54(d)(2)(B)).  "As a result, and as

noted in Sinkler, district courts can 'enlarge the filing period where circumstances warrant,' and

the Court of Appeals will 'generally defer to a [district court] in deciding when such an alteration

is appropriate.'"  Id. (quoting Sinkler, 932 F.3d at 89–90).  Thus, courts in the Second Circuit have

accepted as timely Section 406(b) fee applications where the claimant's counsel "has presented

compelling evidence" as to when he or she received the Notice of Award.  Perry, 2020 WL 360979,

at *4 (finding counsel's three affirmations and screen shots from law firm's case filing system

demonstrating date of receipt of notice of award justified enlarging the time for filing § 406(b)

motion); see Lowe v. Saul, No. 3:16-cv-720 (SRU), 2021 WL 268883, at *2 (D. Conn. Jan. 26, 2021)

(finding counsel's representation that she filed Section 406(b) motion five days after SSA notified

her of amount of award of § 406(a) fees justified excusing any delay in filing motion); Almodovar,

2019 WL 7602176, at *2 (finding that counsel's affirmation that he did not receive Notice of Award until three months after his client received it justified extension of time to file § 406(b) motion).

### B. Application

#### 1. Timeliness of the Motion

Berger filed the Motion on February 17, 2021.  (ECF No. 21).  Berger contends that the Motion is timely because he filed it 15 days after the Status Notice, which informed him that the SSA was withholding $11,444.38 from Bennett's benefits for payment of attorneys' fees.  (ECF Nos. 22 ¶ 10; 26 at 2–3).  Berger contends that, until he received the Status Notice, he did not know how much the SSA would approve under Section 406(a), and therefore did not know the amount of fees to request under § 406(b).  (ECF No. 26 at 3).  Even if the Motion should have been filed within 17 days of the Notice of Award—which is dated March 19, 2019—Berger asks the Court to apply equitable tolling to deem the Motion timely because he "could not make a motion for [§ 406(b)] fees until the fee matter under 42 U.S.C. § 406(a) was settled."  (Id.)

The Court finds that the circumstances presented in this case warrant the conclusion that Berger timely filed the Motion.  Berger states, under penalty of perjury, that his office received the Status Notice dated February 2, 2021.  (ECF No. 22 ¶ 10).  He filed the Motion 15 days later. (ECF No. 21).  In his Reply, he adds that it was not until he received the Status Notice that he knew how much the SSA granted under Section 406(a) and thus the amount to request under Section 406(b).  (ECF No. 26 at 3).[1]  The record supports the conclusion that it was not until the

---

[1] It would have been preferable for Berger to submit a sworn statement as to this fact, rather than including it in an unsworn reply memorandum, as it is well-settled that "[a]n attorney's unsworn statements in a brief are not evidence."  Kulhawik v. Holder, 571 F.3d 296, 298 (2d Cir. 2009); see Rivera v. Saul, No. 18 Civ. 7135 (JLC), 2021 WL

February 2, 2021 Status Notice that Berger knew the amount of attorneys' fees to request, which

is the operative information for triggering the 17-day period.  See Sinkler, 932 F.3d at 88

(explaining that the fourteen (plus three for mailing) period runs from when "counsel receives

notice of the benefits award—and, therefore, the maximum attorney's fees that may be

claimed"); Rivera, 2021 WL 864184, at *2 (finding that "notice directed to counsel [] triggers the

time to petition for fees and not the [Notice of Award] to the claimant"); Almodovar, 2019 WL

7602176, at *2 (noting that counsel "could not file a motion for attorney's fees because he did

not know the amount of past-due benefits" but once he did, "promptly submitted his

application"); see also Jacobson v. Comm'r of Soc. Sec., No. 12 Civ. 8416 (CS) (LMS), 2020 WL

2999235, at *2 (S.D.N.Y. June 3, 2020) (noting that a Section 406(b) motion filed "promptly after

receiving . . . [notice] of the outcome of the § 406(a) application" would represent a reasonable

basis to excuse filing of Section  406(b) motion more than 17 days after Notice of Award).  The

Court agrees that Berger's "justification for the delay—that []he waited to file the [M]otion until

after []he sought attorneys' fees with the [SSA] under [§] 406(a)—is valid."  Lowe, 2021 WL

268883, at *2 (excusing delayed filing of § 406(b) motion filed within five days of receipt of SSA's

determination of § 406(a) fees).  Accordingly, although Berger did not receive in the Notice of

Award, as is more customary, but in the Status Report the information he needed to submit a

request for fees under § 406(b), that does not render his Motion untimely.  For these reasons,

the Court will "not deny the Motion on timeliness grounds."  Id. at *2.

---

864184, at *2 n.3 (S.D.N.Y. Mar. 9, 2021) (accepting, in support of § 406(b) motion, counsel's statement as to first
date of receipt of Notice of Award notwithstanding that it appeared in reply brief rather than sworn declaration).

## 2. Reasonableness of fees

Berger seeks an award of attorneys' fees in the amount of $11,444.38, which, as the

Commissioner acknowledged, is less than 25% of the past-due benefits Bennett was awarded

after remand.  (ECF Nos. 22 at 11; 23 at 5; 25 at 2).  Bennett's counsel was successful in bringing

this case "in that [he] obtained an award of benefits" for him.  Stern v. Covlin, No. 16 Civ. 4250

(LAP) (KHP), 2020 WL 8678087, at *1 (S.D.N.Y. Oct. 8, 2020).  The Court is satisfied that the

amount Berger requests is consistent with the Agreement, and as the Commissioner noted, there

is no evidence that the Agreement is the product of fraud or overreaching.  (ECF No. 25 at 2).

Furthermore, Berger did not unreasonably delay this case in order to increase his fees.  Berger

represents that his experience includes serving as an Assistant District Attorney in Kings County

before his "many years working exclusively on Social Security disability cases both at the

administrative and federal court level."  (ECF No. 22 ¶ 8).  Other courts in this Circuit have also

recognized Berger's depth of experience in Social Security benefits cases.  See, e.g., Muniz v.

Comm'r of Soc. Sec., No. 18 Civ. 8295 (KMK) (PED), 2020 WL 8340078, at *3 (S.D.N.Y. Dec. 15,

2020) (recognizing that Berger "handled the matter efficiently due to his experience" and "has

spent many years working exclusively on Social Security disability matters"), adopted by, 2021

WL 293381 (S.D.N.Y. Jan. 28, 2021).

The Court finds that the fees Berger requests "are not out of line with the character of

the representation and the successful results achieved[,]" nor do they represent a windfall to

Berger. McBride-Meyers v. Saul, No. 16 Civ. 5696 (SDA), 2020 WL 7398717, at *3 (S.D.N.Y.

Dec. 17, 2020).  Berger requests $11,444.38 for 27.1 hours of legal services his office rendered in

this case.  (ECF Nos. 22 ¶ 7; 22-2 at 5).  Berger and his paralegal expended all of their hours on

litigating Bennett's case—they did not record any time relating to fee requests—including

drafting and filing the Complaint, advising Bennett, corresponding with the Commissioner's

counsel, and preparing the 25-page memorandum of law in support of Bennett's motion for

judgment on the pleadings.  (ECF Nos. 15; 22-2).  Berger's efforts were successful in that the Court

remanded the case to the Commissioner for further proceedings, which led to a total award of

benefits to Bennett of nearly $70,000 ($11,444.38 equates to 16.4% of $69,782).  Therefore, the

Court finds that the hours Berger spent on Bennett's case are reasonable.  See McBride-Meyers,

2020 WL 7398717, at *3 (finding 20.5 hours reasonable); Muniz, 2020 WL 8340078, at *3 (finding

27.2 hours reasonable); Polanco v. Saul, No. 16 Civ. 9532 (CM) (OTW), 2020 WL 5569692, at *2

(S.D.N.Y. Sept. 17, 2020) (finding 31.4 hours reasonable).

The Court finds that the de facto hourly rate is also reasonable.  The blended hourly rate—

i.e., including both attorney and paralegal hours—is $422.30, and deducting paralegal hours at

an hourly rate of $100 per hour results in an hourly rate for Berger of $430.24.  (ECF No. 22-2).

Both rates "fall well within the range of rates recently approved by courts in this [D]istrict and

elsewhere in the Second Circuit when analyzing applications under 42 U.S.C. § 406(b)."  Rita M.B.

v. Berryhill, No. 5:15-CV-0262 (DEP), 2018 WL 5784101, at *6 (N.D.N.Y. Nov. 5, 2018) (granting

fee award that represented blended hourly rate of $564.13, and attorney-only hourly rate of

$644.48); see McBride-Meyers, 2020 WL 7398717, at *3 (granting fee award that represented

hourly rate of $454.51); Stern, 2020 WL 8678087, at *1 (recommending fee award that

represented hourly rate of $558.72).

Accordingly, because both the hours expended and the hourly rate are reasonable in

relation to the success Bennett received for his counsel's efforts, the Court finds that an award

of $11,444.38 would not constitute a windfall for Berger and is within the range that other courts in this District have awarded recently in comparable cases.  See Rivera, 2021 WL 864184, at *2 (finding that fee award of $17,075 for 37.3 hours of legal services was reasonable); Cutajar v. Comm'r of Soc. Sec., No. 19 Civ. 5569 (SDA), 2021 WL 1541386, at *3 (S.D.N.Y. Apr. 20, 2021) (finding that reduced fee award of $18,000 for 39.5 hours of legal services was reasonable); McBride-Meyers, 2020 WL 7398717, at *3 (finding that fee award of $9,317 for 20.5 hours of legal services was reasonable).

Finally, Berger must refund to Bennett the EAJA Fees in the amount of $3,774.90.  (ECF No. 22 ¶ 4).  See Wells v. Bowen, 855 F.2d 37, 42 (2d Cir. 1988) (explaining that "dual fee applications are not improper as long as the lesser of any two amounts awarded goes to the attorney's client"); Weaver v. Colvin, No. 15 Civ. 6559 (JPO), 2021 WL 2809107, at *2 (S.D.N.Y. July 6, 2021) (as a condition of § 406(b) fee award, directing counsel to refund to plaintiff the amount previously awarded under EAJA); Cutajar, 2021 WL 1541386, at *4 (noting that "the Savings Provision in the 1985 amendments to the EAJA specifically requires that where an attorney is awarded fees under both the EAJA and § 406(b), 'the claimant's attorney [must] refund[] to the claimant the amount of the smaller fee'") (quoting Pub. L. No. 99–80, § 3, 99 Stat. 183 (Aug. 5, 1985)).

### IV. CONCLUSION

For the reasons set forth above, the Motion is GRANTED as follows:

(1)  Berger is awarded fees under Section 406(b) in the amount of $11,444.38; and

(2)  Berger shall promptly refund to Bennett the sum of $3,774.90, representing the EAJA fees Berger previously received.

The Clerk of the Court is respectfully directed to close ECF No. 21.

Dated:          New York, New York
                August 11, 2021

                                                SO ORDERED.

                                                SARAH L. CAVE
                                                United States Magistrate Judge